JUDGE PETERS
delivered the opinion of the court.
In November, 1867, appellee brought an action against appellant for seven hundred dollars, which he alleged he loaned him, a part in August, 1865, and the residue in September of that year; and also for ninety-six dollars and *86 eighty-one cents, balance which he alleged was due him on a sale of his interest in a store at Nolin Station; and that the books of the late firm of Perry & Allen would show the indebtedness for the goods.
Appellant in his answer to that action denied that he owed appellee any balance for his interest in the store, or that the books of the firm would show such indebtedness. As to loaned money, he admitted he borrowed it at the times and in the amounts stated; but alleged that prior to the 17th of February, 1866, he had made various payments to appellee, and that on the last-named day he paid him the full and entire balance of all debts due and owing by him to appellee, and then took his receipt for one hundred and seventy-five dollars, which was in full of all debts to date, as is expressed in said receipt, which he filed as a part of his answer.
At the June term, 1868, the issues thus imesented by the pleadings were tried by a jury, and resulted in a verdict for the defendant; and a judgment having been rendered in conformity to the finding of the jury, that action there ended.
On the 12th of October, 1868, after the expiration of the term at which the verdict and judgment were rendered, the petition in this case was filed by appellee to obtain a new trial, for the cause set forth in subsection 7, section 369, Civil Code.
The allegations of the petition in reference to the newly-discovered evidence are that, after the expiration of the term of the court at which the action was tried he for the first time learned that he could prove by Preston Collier, of Hardin County, that in the latter part of June or the early part of July, 1866, some months after the date of the receipt used as evidence on the trial by the defendant, and on which the verdict and judgment were based, *87 he (the witness) had a conversation with the defendant, as they were passing his residence, in reference to the work that he was having done on his house. "Witness remarked to him that he would have a nice residence when he got it done: and defendant replied that he would when he got it paid for; that he was owing plaintiff either five or six hundred dollars (the witness could not recollect which amount), and when he got it paid for he would have a nice place. That he had also learned for the first time since the trial that he can prove by William D. Landcaster that in July or August, 1866, he was engaged in the shipment of a lot of hogs, and had a conversation with the defendant at Nolin Station, Hardin County, in which he said to witness, as he was traveling about a great deal, he might see some one who wished to buy a farm, and requested witness, if he saw such a person, to send him to defendant, as he desired to sell; that he was owing plaintiff some money, and wanted to pay him. The amount named he believed was seven or eight hundred dollars. That he had no reason to know or suspect that either of said witnesses knew anything about the issue tried in said action until after the expiration Of the said term of the court, and could not, by the exercise of reasonable diligence, have discovered and produced said evidence at the trial.
He referred to and made the record of,the former suit a part of his petition; and the original receipt relied upon as evidence of payment by the defendant was brought up under a subpoena duces te cum, and is before this court.
The court below adjudged to the plaintiff the relief he sought, and the defendant in that court now asks a reversal of that judgment.
The affidavits of the persons named in the petition were filed with it, in which they say that the statements *88 therein of the conversations between each of them with the appellant are true.
On the trial in the court below Lanclcaster was introduced as a witness by appellee, and stated in his examination in chief substantially what is stated in the petition he would prove, adding that he had not communicated the facts he knew to appellee until after the trial of the other suit. On cross-examination, the witness said appellant “spoke of owing Durbin; and his recollection as to whether it was Durbin he owed six or seven hundred dollars, or plaintiff, is not distinct.
Collier was examined, and proved substantially what it is stated in the petition he would prove.
John B. Perry proved that he had a conversation with appellant in the fall of 1866, in which he asked witness if he knew any one who wanted to buy a farm, and said he owed plaintiff either four or seven hundred dollars, he did not remember which. On cross-examination, he proved he was introduced by appellee as a witness before the jury; and on that trial stated, as near as he could recollect, just what he had stated here.
"William "Wilson stated he was counsel for appellee in the former suit, and never knew until after the trial of that suit that Landcaster and Collier knew anything about the case. He further stated that on the former trial plaintiff h swore one Allen, and asked him what he had heard defendant say about his indebtedness to plaintiff. Allen replied that, shortly after plaintiff sued defendant for the debt, he heard the latter say he was surprised that plaintiff had sued him; that he did not owe him anything; that he had a receipt, was looking for it, and afterward he told witness he had found it. The record of. the former suit, and the original receipt of plaintiff to defendant, both of which were made part *89 of the bill of exceptions, were read. Defendant then introduced one Patterson, who proved that the plaintiff and defendant had "been partners, and dissolved in July, 1866, the former having sold his interest to one Beavers; and witness was then employed as clerk im the store. That in the latter paid of August, 1866, plaintiff came to the store and asked for some articles, which he got, and told witness he would call and pay for them next day; that he did not want them charged, as he and defendant had settled and squared up, and he wanted nothing more to do with him. On being cross-examined, he said he did not tell defendant what he knew until after the former trial, because he did not wish to be a witness; but when this suit was brought he thought there had been trouble enough, and he voluntarily told him what he knew.
J. B. Bead proved that appellee had no work done on his house in 1866, and whether any woi\k was done on it in 1865 or not he did not know; hut he did know that work was done on the house in 1867, and that it was finished in the spring of that year, for he commenced boarding with him on the first of May; that he desired to commence boarding with him the Christmas before, but his house was not then finished, and on that account he declined to take him then.
The foregoing is the substance of the evidence as contained in the hill of exceptions, consisting (independently of the receipt of appellant) of the recollection of the witnesses of what the parties respectively said, three of whom prove an acknowledgment by appellee of an indebtedness to appellant, without being able to state with any degree of certainty the amount; and one of them (Landcaster) said his recollection was not distinct whether appellant' said it 'was appellee or one Durbin he owed six or seven hundred dollars; while the other party proved by one witness *90 that appellee said to him in 1866 he had settled and squared up with him, and wanted nothing more to do with him; and another witness stated, on being asked by appellee for a conversation on the subject of the suit between appellant and himself, that he on that occasion said he had paid the debt and had appellee’s receipt therefor. Even with this evidence before the jury, if the verdict had been in favor of appellant, the court would scarcely have been authorized to have set it aside and grant a new trial; but with the receipt in the scales the weight preponderates greatly on the side of appellant. The receipt reads as follows:
“ $175.00. Received of J. W. Allen one hundred and seventy-five dollars, balance in full of all debts to date, this February 17, 1866. D. F. Perry.”
This language is expressive of not only the amount then paid, but also of payments previously made; and although the paper is slightly mutilated on the right-hand edge, taking off' a part of the last word on the third line, still we think there is enough of it left to show that the word wms “full,” the first letter of which is precisely like the “/” commencing five in the same line; and to read it u in full” harmonizes entirely with the other words of the receipt, when no other word would.
But two pregnant facts are to be noticed in connection with that receipt: first, it was filed with appellant’s answer in the first action, and appellee did not question nor dispute its genuineness, as he had a right to do under section 588, Civil Code; second, in the lengthy petition filed by him in this case he does not deny its genuineness, nor in any manner question its perfect fairness and validity. And with that written acknowledgment of full payment of all debts to date standing unimpeached, and that subsequent to the creation of the alleged d ebt, it is difficult to perceive *91 how any other conclusion than that the debt has been paid can be arrived at. But if we should even be mistaken in the view here presented, still the identical point was in issue in the former trial which is 'sought by this petition to be retried; and the rule was well settled before the adoption of the Code that to entitle the party to a new trial iu such a case the discovered evidence must be of such permanent and unerring character as to preponderate greatly, or have a decisive influence upon the evidence to be overturned by it. (Respass v. McClanahan, Hard. 345; Eccles v. Shackleford, 1 Litt. 35; Yancey v. Downer, 5 Litt. 10; Finley v. Nancy, 3 Mon. 400.) This rule we do not understand to be changed or relaxed by the Civil Code.
The case in any view to be taken was not made out to entitle appellee to a new trial.
"Wlierefore the judgment is reversed, and the cause remanded with directions to dismiss the petition.