## Baltzell and Lilly v. Ates.

(Decided September 27, 1918.)

### Appeal from Fulton Circuit Court.

1. Wills—Lost Will—Establishment—Evidence.—To prove a lost will, its execution, contents, and the fact that it was not revoked, must be clearly and satisfactorily established.

2. Wills—Lost Will—Revocation—Presumption—Evidence—Acts and Declarations of Testator—Admissibility.—A will last seen in the custody of the testator which cannot be found after due search, or its loss accounted for, is presumed to have been revoked, but this presumption may be rebutted by the acts and declarations of the testator, which are admissible on the question of revocation.

3. Wills—Lost Will—Evidence — Revocation — Presumption — Question for Jury.—Where in a will contest there was a presumption that the will was revoked, arising from the fact that it could not be found after due search, or its loss accounted for, there was the evidence by the propounder, her daughter and brother-in-law of declarations by the testator tending to show that the will was

not revoked, the question of revocation was for the jury and not for the court, since the credibility of a witness and the weight of his testimony are for the jury, especially where the witness is a party or a relative of a party.

R. B. FLATT and F. S. MOORE for appellants.

H. T. SMITH and CARR & CARR for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On June 30th, 1913, C. C. Ates died, a resident of Fulton county. He was survived by his wife, Belle Ates, and two children by a former marriage, Effie M. Baltzell and Minnie Ellen Lilly. At the time of his death his life was insured in favor of his wife for $1,000.00, and he owned a residence in the city of Fulton worth about $1,800.00. After his death a search was made for his will, but it could not be found. However, the execution and contents of his will by which he devised all his estate to his wife were proven, and an alleged copy thereof was duly probated by the Fulton County Court. Some time later his two daughters, Effie M. Baltzell and Minnie Ellen Lilly, filed this contest. At the conclusion of the evidence for the propounder the trial court directed the jury to return a verdict sustaining the will. The contestants appeal.

The execution of the will six or seven years before the death of the testator and its contents were proved by those who were present and witnessed its execution. It was also shown that the testator retained possession of the will and that after his death the will could not be found, though a diligent search was made for it. It further appears that the policy insuring his life in favor of his wife for $1,000.00 was also lost and could not be found. In addition to this evidence, C. H. Bransford, who married a daughter of Mrs. Ates by a former marriage, testified that Mr. Ates, shortly before going to California, which was several years before his death, told him that he had made his will that day. At the same time he produced the will and gave it to witness to read. Witness read it, and the will provided that, after the payment of his debts, the balance of his estate should go to his wife. T. P. Finch, a brother-in-law of Mrs. Ates, testified that in the year 1912 testator told him that he

had made a will and left everything to "Miss Belle," the name by which he usually referred to his wife. Mrs. C. H. Bransford, Mrs. Ates' daughter by a former marriage, testified that shortly after Mr. Ates returned from California he stated to her that he had left everything to her mother. This was about three years before his death. About a month before he died he stated that he was glad that if the end came he had provided for Mrs. Ates. He further stated that he wanted to make the request that if anything was left after Mrs. Ates died it should go to witness's little girl. Mrs. Belle Ates, propounder, testified without objection that her husband, on the day before he died, said that he did not think he would live, but that he had everything fixed for her, and had made a will leaving her everything.

To prove a lost will, its execution, contents and the fact that it was not revoked must be clearly and satisfactorily established. Bradshaw v. Butler, 125 Ky., 162, 100 S. W. 837; Chisholm's Heirs v. Ben, et al., 7 B. Monroe, 408. It is also the rule that a will last seen in the custody of the testator, which cannot be found after due search or its loss accounted for, is presumed to have been revoked. Mercer v. Mercer, Admr., 87 Ky. 21, 7 S. W. 401; Webster, &c. v. Lowe, &c., 107 Ky. 293. But this presumption may be rebutted by the acts and declarations of the testator which are admissible on the question of revocation. Chisholm's Heirs v. Ben, et al., *supra.* Here, then, we have a case where on the one side there was a presumption of revocation, while on the other there was evidence of declaration by the testator tending to overcome this presumption. The latter evidence, however, was given by Mrs. Ates, her daughter and brother-in-law. The only basis for the directed verdict is that their evidence was true and conclusive. Ordinarily, of course, the credibility of a witness and the weight of his testimony are for the jury. Especially is this true where the witness is a party or a relative of a party. We, therefore, conclude that under the evidence in this case, the question of revocation was for the jury and not for the court. It follows that the court erred in directing the jury to return a verdict sustaining the will.

Judgment reversed and cause remanded for a new trial consistent with this opinion.